IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:14-604-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| DWAYNE JEROME ANDERSON | ) | |
| _____ | ) | |

   This matter is before the court on the defendant's *pro se* motions for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A).  In his first motion seeking compassionate release (ECF No. 2531), the defendant states that he has serious medical conditions that render him particularly vulnerable to COVID-19.  He contends that he has a weakened immune system due to his pre-existing conditions.

   In his second motion for compassionate release (ECF No. 2674), the defendant contends that he is no longer a career offender because two of his prior sentences should not have been included to calculate his criminal history category.  He argues that the court should recalculate his Guideline range which would give him a reduced sentence.

   The government has responded in opposition to both motions and the defendant has replied thereto.  In its first memorandum (ECF No. 2551), the government argues that the defendant has not shown an extraordinary and compelling reason to support a reduction.  The government also asserts that the relevant § 3553(a) factors show that the defendant would pose a danger to the community.

1

In its second response (ECF No. 2690), the government again argues that the defendant has not shown an extraordinary and compelling reason for release due to his medical conditions and that in any event, he has been fully vaccinated against COVID-19. The government also reasserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response on February 4, 2022.

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

With regard to the medical condition claim, the government acknowledges that the defendant submitted a request to the Warden at FCI Edgefield on September 22, 2020, and the Warden denied his request as not meeting medical criteria for compassionate release on December 1, 2020.

However, the government argues that the defendant's claim based upon changes in the law regarding career offender sentencing/predicate felonies should be dismissed without prejudice because the defendant has failed to exhaust his administrative remedies on those

2

claims.

The government is correct that the defendant's September 22, 2020 request to the Warden for release asserted only grounds of medical conditions.  In other words, the defendant did not put before the Warden the question of whether the defendant would no longer be a career offender if sentenced today—the claim he raises in his second motion for compassionate release.   However, the court will decline at this time to require exhaustion on this issue raised by the defendant. This is because the Warden is bound by U.S. Sentencing Guideline § 1B1.13 which limits the authority of the Warden to grant compassionate release requests to certain specified categories. A change in sentencing law, or more specifically a change to the career offender law, is not within the jurisdiction of the Warden. Therefore, to require the defendant to return to the Warden to request relief that is not within the Warden's power to give would be to require a futile act.   Exhaustion requirements are not jurisdictional and may be excused on grounds of futility.  *Id*.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties.  For the reasons which follow, the defendant's motions are denied.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*,

916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181,

185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

DISCUSSION

I. *Motion Regarding Medical Conditions*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control

(CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

In his first motion, the defendant seeks immediate release and home confinement[1] on the ground that his medical conditions and the general threat from COVID-19 justify his release. He complains that he has the following preexisting conditions: "acute upper respiratory infection (lung disease), disorder of kidney and ureter, prediabetes, exposure to COVID-19, asthma, hypertension, and an enlarged prostate."

---

[1] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")

The defendant's Presentence Report (PSR) (ECF No. 1530) prepared in 2016 noted the defendant's statement at the time that he suffered from kidney stones, asthma, and high blood pressure.  It also indicated that he was not currently taking any prescribed medications for these conditions.

The government points out that a Bureau of Prisons (BOP) medical record generated in November 2020 reflected that the defendant's acute upper respiratory infection was resolved as of September 2020.  Additionally, the government suggests that none of the medical conditions advanced by the defendant in support of his motion meets the CDC's criteria for conditions that increase an adult's risk of severe complications from COVID-19.

The government states that the CDC presented two separate lists of conditions that either definitively entailed a greater risk of severe illness or "might" entail a greater risk of severe illness.  Those "might" conditions were asthma (moderate-to-severe); cerebrovascular disease; cystic fibrosis; hypertension; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight; pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus.  At that time, the government maintained— and most courts agreed —that  inmates with conditions on the "might" list did not present an extraordinary basis for relief.  *See, e.g., United States v. Durham*, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020); *United States v. Moldover*, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) ("District courts have routinely denied motions for

compassionate release based on allegations of only potential COVID-19 risk factors, including asthma and hypertension.").

The defendant's February 4, 2022 reply memorandum takes issue with the government's argument that the defendant's medical conditions do not constitute an extraordinary and compelling reason for his release. The defendant re-emphasizes both the seriousness of his condition and the ongoing COVID-19 pandemic problem within the BOP.

After carefully reviewing the record, the court concludes that the defendant has, in fact, demonstrated an extraordinary and compelling reason, that is, his current medical conditions, for compassionate release.

Also in his reply, the defendant takes issue with the government's suggestion that because he has been vaccinated against COVID, this should not be held against him in his argument that his medical conditions show extraordinary and compelling reasons for his release. Inasmuch as the court sided with the defendant and held that he does have an extraordinary and compelling reason, the fact of vaccination is of no significance one way or the other in the court's decision.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court must now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

9

*Factors Under 18 U.S.C. § 3553(a)*

1.  *Nature and Circumstances of the Offense*.    The defendant was one of 32 individuals named in a 1-Count Superseding Indictment charging "Conspiracy to Possess with Intent to Distribute and to Distribute 28 Grams of a Mixture or Substance Containing Crack Cocaine," a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851.

The government had previously filed an Information (ECF No. 670) pursuant to 21 U.S.C. § 851 notifying the defendant that he was subject to enhanced penalties based upon a 2004 prior felony drug conviction and two other convictions.[2]

On February 24, 2016, the defendant signed a written Plea Agreement (ECF No. 972) and pleaded guilty to the lesser included offense in Count 1.   In Paragraph 8 of the Plea Agreement, the defendant stipulated that he had one prior felony drug conviction that had become final.  A handwritten annotation, initialed by all parties, refers to that prior felony as a "2004 felony."   The defendant also agreed not to contest the § 851 Information that was filed.

The Presentence Report (PSR) (ECF No. 1530) prepared by the United States Probation Office determined the defendant's base offense level was 32. With enhancements under United States Sentencing Guideline (USSG) § 4B1.1 (Career Offender), the

---

[2] The prior convictions listed in Information were: (1)  3-28-1994: PWID Crack Cocaine, General Sessions Number 92GS4011480, Arrest date: 6-27-1992, Sentenced to YOA NTE 5 year; (2) 4-15-1998: Manufacturing, Distribution, Etc. Ice/Crank/Crack Cocaine 1st, General Sessions Number 98GS4024741, Sentenced to 3 years concurrent; and (3) 3-2-3004: Possession of Schedule I(B)(C) LSD/Schedule II (Cocaine) 1st,  General Sessions Number 04GS4039098, Sentenced to 90 days concurrent.

defendant's offense level increased 2 levels to 34. That level 34 was reduced by 3 levels for acceptance of responsibility, for a new total offense level of 31. Because the defendant was also determined to be a career offender, his criminal history category was VI. The total offense level of 31 and criminal history category of VI produced a Guidelines range of 188 to 235 months.

At the sentencing hearing on October 6, 2016, the government then moved for a downward departure pursuant to USSG § 5K1.1 for the defendant's substantial assistance. This court granted the government's motion and, as a result, the defendant's offense level was reduced 2 levels from 31 to 29, producing a new range of 151 to 188 months. This court then sentenced the defendant to 151 months—the low end of the new Guideline range. He was also sentenced to 6 years of supervised release.

The defendant filed an appeal of his conviction and sentence and the Fourth Circuit Court of Appeals affirmed this court's judgment. The defendant has filed several motions to compel the government to file Rule 35 motions, all of which have been denied by this court. The defendant filed a motion pursuant to 28 U.S.C. § 2255 raising claims of ineffective assistance of counsel which this court denied on November 26, 2018 (ECF No. 2200). The defendant then moved for relief under the First Step Act and Amendments 782 and 794 to the USSG. This court denied relief finding that the Fair Sentencing Act did not reduce the statutory penalties associated with an original conviction under 21 U.S.C. § 841(b)(1)(C). Moreover, when the defendant was sentenced in 2015, the Guidelines

already incorporated the changes set forth in Amendment 782, and Amendment 794 was not retroactive. (ECF No. 2270).

The defendant is scheduled for release from the BOP in February 2026. It appears that he has received credit for time served since May 28, 2015. He is located at the Federal Correctional Institution in Edgefield, South Carolina.

2. *History and Characteristics of the Defendant.* Before engaging in the conduct which underlays his federal charge, the defendant had a significant criminal history which included convictions for narcotics crimes, firearms crimes, criminal domestic violence, and assault with intent to kill. The government points out that the defendant was on supervised release from an earlier federal criminal conviction when he committed the acts charged in this case. However, the sentencing Guidelines adequately accounted for this aggravating factor by adding two points to his criminal offense score.

The defendant is presently 42 years of age and has served approximately 99 months or two-thirds of his custodial sentence. His expected release date is February 2026. The defendant has never been legally married but has shared a home with a partner from 2011 until 2013. One child was born to this relationship. In addition to this child, the defendant has 14 children and 13 grandchildren.

He states that upon release he will be living with his sister in Columbia, South Carolina and will be employed selling used cars.

*Post Sentencing Conduct*

The BOP records show that the defendant has had no disciplinary infractions while incarcerated.

The defendant has taken various educational courses for job fairs, reading, legal research, electronic law library training, and GED courses.  It is not clear whether the defendant has obtained his GED.  The BOP transcript notes that the defendant is "exempt GED, promotable to PG1."  He has also completed the Non-Residential Drug Program; 9 to 5 beats 10 to Life classes.

The defendant has a long work history as a food service worker.  The defendant notes that he has maintained his job as a head cook for 5 years straight.

3.  *Seriousness of the Crimes*.  As noted, this court regards the defendant's crimes as very serious and are fully supportive of a significant sentence.

4.  *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*.  The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5.  *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*.  The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6.  *Whether the Sentence Protects the Public from Future Crimes of the Defendant*.  The court finds that a significant sentence is necessary to protect the public from future

crimes of the defendant.

7. *Need to Avoid Unwarranted Disparity*.  The defendant was one of 32 individuals charged in the conspiracy.  While there are some defendants who received lower sentences (and some who received greater sentences), the sentence imposed on the defendant is not substantially different from sentences imposed on *similarly situated* defendants in this same case.

## II.  *Challenge to Career Offender Status*

As an alternative basis for relief, the defendant contends that his sentence today would not be as severe under the now-applicable Guidelines.  The defendant was determined to be a Career Offender under the advisory Guidelines.  The First Step Act made no changes to the predicate act requirements for career offender status under the Guidelines.  Case law from the appellate courts has, to some extent, modified the requirements for career offender status which must be addressed by this court.[3]

In order to be classified as a career offender under the Guidelines, the defendant must "(1) be at least 18 years of age at the time of the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions for either a crime of violence or

---

[3] The Fourth Circuit Court of Appeals in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) and other decisions, has indicated that in considering whether a defendant has demonstrated an extraordinary and compelling reason for a sentence reduction, the court must take a fresh look at sentencing law as it exists today.  And, if there is a significant change in the law, this change, when combined with an individualized assessment, can be a basis for an alteration of the defendant's sentence.  As noted above, when the defendant was sentenced in 2016, he qualified under the then-applicable Guidelines providing for career offender status.

a controlled substance offense." USSG § 4B1.1.

The two predicate acts under USSG § 4B1.1 are defined as:

(a) [t]he term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

(b) [t]he term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

The government concedes that if the defendant were convicted and sentenced today for the same conspiracy offense as in the instant case, he would not be deemed a career offender in light of *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019).[4] *Norman* held that a controlled substance conspiracy in violation of 21 U.S.C. § 846 is not categorically a controlled substance offense, and thus not a qualifying offense for career offender status under the USSG. *Norman's* holding, however, has not been deemed to apply retroactively.

---

[4] The defendant also asserts his Career Offender status is no longer valid because some of his predicate convictions involved Youthful Offender sentences. Inasmuch as the government concedes that the defendant would no longer be a Career Offender under *Norman*, it is unnecessary for the court to address the defendant's subsidiary argument.

Thus, if the defendant was being sentenced today post-First Step Act of 2018 and post-*Norman*, the defendant would be exposed to non-career offender Guideline provisions of a total offense level of 29 and a criminal history category of VI, and the Guideline range would have been 151 to 188 months. Providing the same 2-level departure granted at his original sentencing under USSG §5K1.1, the defendant's sentencing range with a like departure would be 130 to 162 months.

This court acknowledges that under *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), it is authorized, in compassionate release cases, to examine the sentence the defendant would receive today as compared with the sentence actually imposed at the time of conviction. As noted above, removing the career offender enhancement from the defendant's Guideline calculations results in a reduction of the low end of the Guidelines by 21 months. *McCoy* did not, however, *require* that this court reduce a defendant's sentence based upon the mere difference in Guideline calculations.

The *McCoy* court also emphasized certain factors not present in this case when calling for the need for "individualized inquiries." For example, in *McCoy*, the defendants were in their early 20s when they committed the offenses of conviction and had relatively no criminal record. Additionally, those defendants had spent substantial years incarcerated (17–25 years). The unstacking of the § 924(c) sentences in *McCoy* resulted in a reduction from 45 years to 15 years (a 66% reduction) for some defendants and a reduction of 200 months for another.

16

In the case before this court, the defendant was in his late 30s when he committed the offenses of conviction. Additionally, the convictions listed in the defendant's PSR span a full 8 pages of the report. These convictions began in 1992 when the defendant was 17 years old, and continued until 2015. Among the convictions involved were possession of crack cocaine, receiving stolen goods, possession of a stolen pistol, possession of marijuana, false information to a police officer, failure to stop for a blue light, possession of a stolen vehicle, various motor vehicle violations such as driving without a license, and riding without a helmet, pointing and presenting a firearm, resisting arrest, possession of cocaine, driving without a driver's license or registration, simple possession of marijuana, criminal domestic violence of a high and aggravated nature, burglary, assault with intent to kill, criminal domestic violence, malicious injury to personal property, felon in possession of a firearm, and several driving under suspension convictions. Additionally, the defendant has only served 99 months of incarceration.

In his February 4 reply, the defendant takes issue with the government's suggestion that he would constitute a danger to the community if released. The defendant correctly recites all of the § 3553(a) factors and contends that he has "turned the corner on criminal activities and has learned the last lesson on crime does not pay." He again points out that he has no disciplinary infractions while incarcerated. He suggests that dangerousness requires "a discretionary balancing of multiple factors, not just dangerousness."

17

While all this may be true, the court cannot ignore the defendant's substantial criminal history, outlined in detail above, that began in 1992 when the defendant was 17 years old, and which continued more than 20 years later until 2015, as well as all of the § 3553(a) factors discussed above.

These criminal convictions resulted in a subtotal criminal history score of 27. Two additional points were added because the defendant was on supervised release when he committed the instant offenses. Therefore, the defendant's criminal history score—without reference to the career offender Guideline—is 29. This still places the defendant in a criminal history category of VI, without reference to career offender status. The 21-month difference caused by the removal of the career offender designation is a far cry from the "gross disparity" of 200 months and 30 years considered in *McCoy*.

Because the facts presented in *McCoy* are quite different from the facts presented here, this court determines that the fact that the defendant would not longer qualify as a career offender if sentenced today in light of *Norman* (because of intervening Fourth Circuit precedent, not statutory changes in the law), the court declines to disturb the defendant's sentence for these reasons.

### III.  *Relief Under § 401 of the First Step Act*

Although the defendant's motion is predicated entirely on 18 U.S.C. § 3582(c)(1)(A), to the extent the defendant might seek relief under § 401 of the First Step Act, the defendant would not be entitled to relief. The defendant was sentenced under 21 U.S.C. § 841 (b)(1)(C)

18

and that section has been held by the Supreme Court not to be a covered offense under the First Step Act. In *Terry v. United States*, 141 S.Ct. 1858, 1862–63 (2021), the Supreme Court held that § 401 of the First Step Act did not apply in cases where the original conviction was under § 841(b)(1)(C). Therefore, changes to the definition of "predicate acts" under § 851 enhancements are not implicated in the defendant's case.

## CONCLUSION

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motion is respectfully denied with regard to the defendant's motion for compassionate release on this issue. (ECF No. 2531).

The defendant's second motion for compassionate release with regard to his career offender status is denied for the reasons stated herein (ECF No. 2674).

IT IS SO ORDERED.

February 9, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

19